**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**MELVIN GAMAGE**                                                                           **PLAINTIFF**

**V.**                                       **CASE NO. 3:10-CV-666**

**WEXFORD HEALTH SOURCES, INC.; et al.**                     **DEFENDANTS**

**ORDER**

This matter is before the Court on the Defendants' Motions for Summary Judgment [108][111]. The Plaintiff has responded in opposition to the motions and requests that they be denied. Having considered the parties' submissions, case record, and applicable law, the Court finds that the Defendants' motions should be granted for the reasons provided herein.

CASE BACKGROUND

Plaintiff Melvin Gamage, proceeding *pro se* and *in forma pauperis*, filed his 42 U.S.C. § 1983 complaint in this Court on November 17, 2010, alleging that the Defendant prison officials and medical staff denied him adequate medical treatment and/or were deliberately indifferent to his medical needs. Gamage seeks an unspecified amount of monetary damages for the alleged constitutional violations.[1] His claims arise from events which took place while he was a post-conviction inmate at Central Mississippi Correctional Facility ("CMCF") and Mississippi State Penitentiary ("MSP").[2]

---

[1] *See* Omnibus Hearing Transcript [111-1] at 42:9-19.

[2] CMCF is located in Pearl, Mississippi and MSP is located in Parchman, Mississippi. Gamage was housed at South Mississippi Correctional Institute ("SMCI") in Leakesville, Mississippi until he was moved to CMCF in June 2007. On February 13, 2009, Gamage was transferred from CMCF to MSP. Around late June 2009, Gamage was transferred back to

1

The Defendants in this lawsuit are Gloria Perry, Christopher Epps, Margaret Bingham, Robert Moore, James Burke, Pamela Holman-Johnson, Daisy Thomas, and Wexford Health Sources, Inc.[3] Dr. Gloria Perry is the Chief Medical Doctor at the Mississippi Department of Corrections ("MDOC"). Margaret Bingham was Superintendent at CMCF when the Plaintiff's claims arose. Christopher Epps is the MDOC Commissioner.[4] Wexford Health Sources, Inc. ("Wexford") has a contract with the State of Mississippi to provide medical care to inmates incarcerated at MDOC facilities. Defendants Robert Moore, James Burke, and Daisy Thomas are doctors who were employed by Wexford during the times alleged in this lawsuit. Pamela Holman-Johnson is a nurse practitioner who was also employed by Wexford at all relevant times herein. Drs. Moore and Thomas treated the Plaintiff during his incarceration at CMCF, whereas Dr. Burke and Ms. Johnson treated Gamage while he was held at MSP.[5]

The Plaintiff claims he needs three medications to treat his heart problems, muscle spasms, and body pain: Plavix, Baclofen, and Ultram.[6] He alleges that the Defendants

---

SMCI, where he stayed until September 2009 at which time he was moved to CMCF.

[3] The Plaintiff originally named Earnest Lee as a Defendant in this lawsuit, but voluntarily agreed to dismiss his claims against Lee at the May 11, 2011, omnibus hearing. Order [43] at 2. In addition, Daisy Thomas and Pamela Holman-Johnson were identified as Unknown Thomas and Unknown Johnson in the complaint. At the omnibus hearing, the Plaintiff stated that Daisy Thomas is the correct name. Omnibus Transcript 38:4-17. Pamela-Holman Johnson filed an answer to the complaint, identifying her proper name. Doc. [49].

[4] Throughout this opinion, the Court may occasionally refer to Dr. Perry, Superintendent Bingham, and Commissioner Epps as the MDOC Defendants.

[5] Throughout this opinion, the Court may refer to Wexford, Nurse Johnson, Dr. Moore, Dr. Burke, and Dr. Thomas as the Wexford Defendants.

[6] The Plaintiff was prescribed Ultram in February or March 2011. *See* Order [43] at 2. He allegedly suffered a heart attack in December 2010, after this lawsuit commenced. *Id.*

intentionally denied him "his prescribed medication [for] more than half the time." Doc. [119] at 2. The Plaintiff previously underwent an above-the-knee amputation on his right leg and now wears a prosthetic leg. He also suffers from muscle spasms, which he claims are due to him not drinking enough water.[7] He believes that he should not be taken off any of the medications and that Ultram is the most effective treatment for his muscle spasms.

The Plaintiff is suing Dr. Moore because Dr. Moore allegedly said he would order Plavix, Ultram, and Baclofen for the Plaintiff, but failed to complete the order. Omnibus Hearing Transcript [111-1] at 30:16-34:11. The Plaintiff claims that as a result of this failure, he did not receive the medications until a later date when Dr. Thomas ordered the medications. *Id*.

Mr. Gamage alleges that when he started complaining about his health in 2008, he was seen by Dr. Thomas at CMCF. *Id.* at 28:2-13. According to Gamage, Dr. Thomas told him that Wexford had begun screening inmates to determine which ones needed to be taken off Ultram and that she would no longer be able to order Ultram for him. *Id*. The Plaintiff is suing Dr. Thomas based on her taking him off Ultram. However, he claims that after filing this lawsuit, Dr. Thomas resumed giving him Ultram. *Id*. at 28:16-29:1. Gamage is suing Wexford because it did not allow prisoners to have Ultram, a prescribed medication he believed he needed for his muscle spasms. *Id*. at 29:5-12.

Gamage asserts that while he was housed at MSP, Nurse Johnson gave him "Elavil, a psych medication" although he was not a psychiatric patient. *Id*. at 34:22-35:1. According to the Plaintiff, Nurse Johnson substituted Ultram with Elavil. *Id*. at 40:15-41:10. He is suing

---

[7]Gamage claims that he suffers from muscles spasms because he does not drink enough water which is because, he alleges, the water at CMCF is unfiltered and dirty.

Nurse Johnson because he did not believe she should have prescribed Elavil for him. *Id*. at 41:11-15.

Gamage's claim against Dr. Burke is based on Dr. Burke's failure to take him off Elavil. *Id.* at 35:7-16. In addition, he alleges that Dr. Burke refused to check his medical file and give him the proper medications that he needed while at MSP. 34:13-37:12.

The Plaintiff asserts that he wrote letters to Dr. Perry about his ill-fitting prosthetic leg,[8] but she did not respond or take any actions to ensure that he received a properly adjusted prosthetic leg, was getting proper medications, or was able to meet his appointments. *Id.* at 22:13-24:6. After not receiving a response from Dr. Perry, Gamage wrote letters to Commissioner Epps and requested blood thinner, Plavix, Ultram, and Baclofen. *Id*. at 26:5-28:1. However, the Plaintiff contends that Commissioner Epps did not respond to the requests. *Id*. Gamage further claims he informed Superintendent Bingham that he was not receiving timely medical treatment, but she did not follow up to ensure that he received treatment. *Id*. at 20:20-22:6. Gamage also appears to argue that the Defendants' actions caused him to suffer two heart attacks in December 2010, after this lawsuit commenced.[9]

All Defendants have moved for summary judgment [108][111] and essentially argue that their motions should be granted because they did not violate the Plaintiff's constitutional rights.

---

[8]In his response to the MDOC Defendants' motion, Gamage does not claim that the prosthetic leg is ill-fitted. Instead, he argues that the Defendants failed to ensure that he was able to wear "his prosthesis by providing [a] special shoe..." Doc. [117] at 2. Gamage claims that since September 2011, he has been unable to wear his prosthesis because he does not have the special shoes. *Id.* at 10. Based on his response to the Defendants' motions, it appears that the Plaintiff has abandoned his argument concerning whether his prosthesis was improperly fitted.

[9]According to his medical records, Gamage had an acute anterior myocardial infarction. Doc. [114] at 392. As a result, a stent was placed in his right coronary and left anterior arteries.

In response to the motions, the Plaintiff argues that summary judgment should be denied because material fact issues remain which require this case to proceed to trial. Having considered the parties arguments, the Court will now evaluate the record to determine whether the Plaintiff's constitutional rights were violated and whether the Defendants are entitled to judgment as a matter of law.

LEGAL AUTHORITY

Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 391 (5th Cir. 2009) (quoting *Crawford v. Formosa Plastics Corp*., 234 F.3d 899, 902 (5th Cir. 2000)). The Court must review all evidence and draw all reasonable inferences in the non-moving party's favor. 555 F.3d at 391. The non-moving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

In the absence of proof, the Court will not assume that the non-moving party could have proven the necessary facts. *Paz,* 555 F.3d at 391. The Court should grant summary judgment if the plaintiff "fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts

5

immaterial because there is no longer a genuine issue of material fact." *Id.*

Denial of Medical Care / Deliberate Indifference

To prevail on a denial of medical care claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" because "only such indifference [] can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). "[A] prison official cannot be found liable under the Eighth Amendment...unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1970). The official must have known that an inmate faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 847. If the risk is obvious, the official's knowledge of that risk may be inferred. *Id.* at 837; *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006).

A prisoner's mere disagreement with medical treatment does not state a valid claim for deliberate indifference. *Castilla v. July*, 470 Fed. Appx. 358, 359 (5th Cir. 2012) (citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)). Rather, the prisoner-plaintiff must demonstrate that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985).

Mr. Gamage claims that he was prescribed[10] medication to control his "chronic constant back pain and recurring muscle spasm, but...Wexford providers have on occasion failed to keep the medication in stock...and...failed to ensure the prescribed medication was allowed [to be] dispensed to the plaintiff as prescribed." Doc. [119] at 10. The Plaintiff argues that the Wexford Defendants' intentional interference with his prescribed treatment constitutes deliberate indifference.[11] He asserts that the MDOC Defendants are likewise liable because they oversaw the medical division at the prison.

The Plaintiff may disagree with the effectiveness of the treatment he received and/ or the medication he was given to treat his conditions; however he does provide sufficient facts to support a claim that the Defendants refused to treat him or were deliberately indifferent ot his

---

[10]Gamage claims that Drs. Walker and Webb, who were employed by Wexford but are not named in this lawsuit, prescribed the medications at issue.

[11]The Plaintiff argues in his response that "'[i]ntentionally interfering with the treatment once prescribed' is one of the forms of deliberate indifference cited by the Supreme Court." Doc [119] at 14 (citing *Estelle*, 429 U.S. at 105). However, the Plaintiff appears to take this sentence in the opinion out of context. The entire passage reads as follows:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states cause of action under § 1983.
> This conclusion does not mean, however, that every claim by a prisoner that he has not received medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.

429 U.S. at 104-105.

medical needs.[12] Therefore, it appears his only claim is that the Defendants denied him regular access to Plavix, Baclofen, and Ultram.[13]

In February 2009, while housed at MSP, Gamage was taken off Baclofen and given Elavil. Doc. [111-3]. He was given Elavil from February 20, 2009, to approximately August 19, 2009. Doc. [114] at 326. In April 2009, he was given Ultram. Doc. [111-3]. According to Dr. Burke, Baclofen is a muscle relaxer and Elavil is an anti-depressant used for treating chronic pain. *Id.* Dr. Burke's medical opinion is that the long term use of Baclofen can cause significant problems and that it was proper to substitute Baclofen with Elavil. *Id.*

Mr. Gamage's medical records show that medical staff regularly gave him Baclofen and Ultram.[14] When Gamage arrived at CMCF in September 2009, his medications included daily

---

[12]Indeed, the record includes approximately 1,000 pages of medical records documenting Plaintiff's extensive medical treatment, much of which was provided by the Defendants. *See* Docs. [114, 114-1].

[13]Since the Plaintiff does not address his argument concerning the fit of his prosthesis, it appears that he no longer wishes to pursue this claim. As to the request for special shoes, the Plaintiff asserted this claim in the complaint, but failed to mention it at the omnibus hearing although he was given an opportunity to do so. Because the Plaintiff did not address the special shoes claim at the omnibus hearing and only raised it in response to the motions for summary judgment, that claim is not properly before the Court at this time. *See generally Kennedy v. BAE Sys. Info. Tech., Inc.*, 2011 WL 6211171, at *7 (S.D. Miss. Dec. 14, 2011) ("A reply memorandum is not the appropriate place to raise new arguments for dismissal"). *See also, Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (Testimony offered at an omnibus hearing supercedes allegations made in the *pro se* complaint), overruled on other grounds, *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed. 2d 338 (1989).

[14]Gamage's medical records reflect that he was continually given Ultram on or about April 1, 2009 and through February 2011. *See* Doc. [114] at 293, 300, 310, 323, 336, and 366. During this time frame, the Plaintiff occasionally was taken off Ultram. *Id*. He was given Baclofen from May 26, 2009 through April 2011. *See* Doc [114] at 293, 300, 308, 310, 323, 333, 359, 366, 496, and 506.

dosages[15] of Baclofen and Ultram. Doc. [114] at 28. His medical records do not reflect a prescription for Plavix at that time. Doc. [114] at 26-27. Although the Plaintiff prepared sick call requests for refills of Baclofen and Ultram, he did not request Plavix.[16] Plavix was prescribed later in 2010 as addressed below.

In February 2010, Gamage's prescription for Baclofen was lowered.[17] *Id*. at 59. On May 25, 2010, Gamage's prescription was again updated and he started taking Baclofen twice daily. *Id*. at 81. In July 2010, he was ordered to take Baclofen once daily. *Id.* at 85. On July 23, 2010, Gamage was seen by CMCF medical staff concerning his sick call request for Ultram. *Id*. at 89. Dr. Moore denied the Plaintiff's request to renew his Ultram prescription and ordered that he take Tylenol. *Id.* at 90. In August 2010, Gamage started back receiving Ultram. *Id.* at 96. By December 2010, the Plaintiff was receiving Plavix, Baclofen, and Ultram. *Id*. at 487.

Gamage suffered an anterior myocardial infarction on December 10, 2010, and was admitted to Central Mississippi Medical Center ("CMMC") where he underwent an angioplasty and a stent placement. Doc. [114] at 433. At that time, he was prescribed one daily dosage of Plavix and two daily dosages Baclofen. *Id.* at 436. He was also ordered to take an Ultram "look alike"[18] twice daily. *Id.* When Gamage was released from CMMC on December 14, 2010, he

---

[15]Gamage was ordered to take 20 milligrams of Baclofen twice daily and 50 milligrams of Ultram. Doc [114] at 28.

[16]*See* Doc. [114] at 289, 290, 302, 303, 307, 500, 508, 509, 510, and 514. The Plaintiff did, however, start receiving Plavix in December 2010. *Id*. at 359. According to Dr. Burke, doctors have no control over the delivery of Plavix once they order it for a patient. Doc. [111-3].

[17]Gamage was ordered to take 10 milligrams of Baclofen by mouth "BID."

[18]The Medication Administration Record lists the medication as "IreMADOL HCl *LOOK ALIKE* (ULTRAM *LOOK ALIKE*)." Doc. [114] at 436.

9

was given three samples of Plavix. *Id*. at 460-461. On December 15, 2010, Dr. Thomas ordered for him to take Plavix daily for approximately six months and to take Baclofen twice daily for three months. *Id*. at 359.

On December 19, 2010, Gamage returned to CMMC complaining of chest pains, shortness of breath, and dyspnea. *Id*. at 461. He was not given more Plavix once he ran out of the samples he received from the hospital. *Id*. Therefore, it appears that Gamage was out of the Plavix for, at worst, approximately two days. Dr. McGee, the treating physician, ordered to restart the Plaintiff's prescription of Plavix. *Id.* at 461-462. That day, CMMC staff sent a fax to the pharmacy for Gamage's prescribed medications, which included Ultram, Baclofen, and Plavix. Doc. [114] at 378. On December 22, 1010, Gamage was discharged from CMMC and given more samples of Plavix. *Id*. at 388. CMMC staff emphasized to MDOC doctors the importance of Gamage continuing to take Plavix for at least nine months. *Id*. Dr. Thomas ordered refills of Plavix[19] and Baclofen after Gamage's prescriptions ran out in June and April 2011,[20] respectively. *Id.* at 353.

The Plaintiff's claim against the Wexford Defendants is simply a disagreement or dissatisfaction with the medical treatment he received. During the times the Plaintiff did not receive his preferred medications, he was given alternative medications. Indeed, Dr. Burke opined that it was proper to substitute Baclofen with Elavil as continued use of Baclofen could

---

[19]Included in the Plaintiff's medical records are notes from December 23, 2010 to January 4, 2011, which provide that medical staff informed Gamage that Plavix was a restricted medication, not a "KOP," but that Gamage refused to bring the Plavix he received from the hospital back to the medication area. Doc. [114] at 369 and 376.

[20]Dr. Thomas ordered a five month refill of Plavix and a six month refill of Baclofen.

10

cause future problems. Contrary to the Plaintiff's assertion, Elavil was not a "psych medicine," but rather an anti-depressant used to treat chronic pain, from which the Plaintiff suffered. *See* Burke Affidavit [111-3]. The Plaintiff asserts that Dr. Burke should have overruled Nurse Johnson and taken him off of Elavil. However, a mere disagreement with the nature of treatment or medication provided does not establish deliberate indifference. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006). Further, the Plaintiff is not entitled to receive medications simply because he requested them.[21]

The record shows that Gamage was regularly given Plavix, Baclofen, Ultram, and other medications to treat his medical conditions. Any brief periods he did not have access to his preferred medications were, at worst, an inconvenience. The Constitution only prohibits "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The Plaintiff has not demonstrated that Nurse Johnson, Dr. Moore, Dr. Thomas, or Dr. Burke regularly withheld medications from him or that they acted with deliberate indifference to his medical needs. Accordingly, there was no Eighth Amendment violation and his claim against these Defendants must fail.

The Plaintiff's only claim against Wexford Health Sources is based on Wexford allegedly not giving Ultram to inmates. Gamage concedes that he started back receiving Ultram in December 2010. Since Wexford is not denying Ultram to inmates and because the Plaintiff has provided no other basis for relief, Wexford should be granted summary judgment on this claim.

As to the MDOC Defendants, it is not clear whether the Plaintiff is suing them in their

---

[21]*See Barksdale v. King,* 699 F.2d 744, 748 (5th Cir. 1983) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves, nor the therapy that Medicare and Medicaid provides for the aged or needy").

individual capacity, official capacity, or both. However, because the Plaintiff only seeks monetary damages, any claim against these Defendants in their official capacity is barred by sovereign immunity.[22] Further, the Plaintiff has failed to show that an unconstitutional policy, custom or practice of the MDOC is the "moving force" behind the alleged violation of his constitutional rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) (stating that a local government can only be responsible under § 1983 when its policy or custom is the moving force of a constitutional violation).

As to the claims against them in their individual capacity, the MDOC Defendants are entitled to qualified immunity because the Plaintiff did not suffer a constitutional violation. In determining whether a state official is entitled to qualified immunity, the court must decide: (a) whether the facts alleged by the plaintiff show that the official violated a constitutional right; and (b) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231-232 (2009). If a state official pleads "qualified immunity," the court must enter a judgment in favor of the official unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Commissioner Epps and Superintendent Bingham assert, in their sworn affidavits, that they had no direct contact with the Plaintiff and that they do not have authority to order or deny that medical treatment or specific medications be given to an inmate. Docs. [108-1] and [108-2].

---

[22]*See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (stating that the Eleventh Amendment bars claims for money damages asserted against prison officials in their official capacities).

Likewise, Dr. Perry asserts that she had no direct contact with Gamage and has no authority, as Chief Medical Officer for MDOC, concerning the type of treatment inmates receive "as such decisions are made by the onsite medical providers at each prison facility." Doc. [108-3]. Since these MDOC Defendants were not responsible for determining the type of treatment or medications inmates received, they could not have been deliberately indifferent to the Plaintiff's medical needs. Further, the Court has already determined that the Plaintiff did not suffer a constitutional violation. As such, the MDOC Defendants are entitled to qualified immunity and should be granted summary judgment on the claims asserted against them.

CONCLUSION

Based on the foregoing analysis, the Plaintiff has not shown that he suffered a constitutional violation. His disagreement with the Defendant treating physicians' treatment, alone, does not rise to the level of deliberate indifference. Accordingly, there was no constitutional violation and the Defendants are entitled to judgment as a matter of law. The motions for summary judgment [108][111] are granted. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered.

SO ORDERED, this the 26th day of February, 2013.

/s/MICHAEL T. PARKER
UNITED STATES MAGISTRATE JUDGE